In re TOM WOODS USED CARS, INC., formerly George Woods & Son, Inc., d/b/a Tom Woods Used Cars, Debtor.

Richard P. JAHN, Jr., Trustee, Plaintiff,

v.

Roy QUINTRELL, d/b/a Roy Quintrell Auto Lease Stores; Roy Townsend, d/b/a Mountain View Motors; Charles Abernathy, d/b/a 411 Motors; and Gamble Motor Company, Inc., Defendants.

Bankruptcy No. 1–81–00802.
Adv. No. 1–81–0418.

United States Bankruptcy Court,
E. D. Tennessee.

June 30, 1982.

Richard P. Jahn, Jr., Tanner, Jahn, Atchley, Bridges, & Jahn, Chattanooga, Tenn., for Trustee.

Richard McAfee, Miller & Martin, Chattanooga, Tenn., for Roy Quintrell.

Gus A. Wood, III, Morgan, Garner, Wood & Guthrie, Chattanooga, Tenn., for Charles Abernathy d/b/a 411 Motors and Gamble Motor Co., Inc.

Arnold Stulce, Chattanooga, Tenn., for Ken and Ruby Shipley.

RALPH H. KELLEY, Bankruptcy Judge.

In this adversary proceeding the trustee seeks to obtain from 411 Motors and Gamble Motor Company the title certificates to seven automobiles which the defendants sold to the debtor, Tom Woods, who re-sold them to seven individuals.

This adversary proceeding also involves a dispute between the trustee and another defendant, Roy Quintrell, over the proceeds of the sale of a car. That issue is dealt with in the second part of this memorandum. Any remaining disputes will be dealt with by separate memoranda or orders.

I

As to whether the trustee is entitled to recover the certificates of title from Gamble Motor Company and 411 Motors, the court finds the facts as follows.

The debtor was a used car dealer who had been in business for eight to ten years. Gamble Motor Company and Charles Abernathy, doing business as 411 Motors, are dealers who buy and sell used cars. Each has dealt extensively with the debtor. In the two or three years before Tom Woods' bankruptcy, 411 Motors sold it more than 50 automobiles. Gamble Motor Company sold the debtor approximately 100 automobiles. Both dealers sold cars to the debtor on a wholesale basis.

Both dealers followed essentially the same procedure in selling cars to the debtor. They would call the debtor and tell him they had a car or cars for sale. They would agree with the debtor on a price. The debtor would send a driver or drivers to drive the car or cars back to Chattanooga. Gamble Motor Company is located in LaFollette, Tennessee, and 411 Motors is located in Madisonville, Tennessee. One of the

drivers would give the dealer a draft, in the form of an envelope, for the agreed purchase price. When the cars arrived in Chattanooga, the debtor would inspect them. He had the right to refuse a car but seldom did. If the debtor found no obvious defects, he would prepare the car for sale. This took a short time. Both the dealers knew that the debtor could and usually did offer the cars for sale shortly after they arrived in Chattanooga.

When the dealer received the title certificate and bill of sale to an automobile he would place the papers in the draft envelope along with his bill of sale to the debtor. The draft would then be deposited at the dealer's bank in Madisonville or La-Follette. The dealer's bank would forward the draft to the debtor's bank in Chattanooga. After calling the debtor, his bank would pay the draft, and he would obtain the title papers. This process could take anywhere from several days to several weeks to complete, depending on how long it took the dealer to acquire the title papers from its seller. The testimony showed that it was not uncommon for one vehicle to be sold at wholesale three or four times within a few weeks before the debtor acquired it and offered it for sale to the general public.

The result of this procedure was that the debtor often had cars for sale and sold them before he acquired the title papers. This is what happened with respect to the seven cars in question. All were sold to the individuals before the debtor paid the dealers and obtained the title papers. The debtor assured them that he would do the paperwork and apply for the titles himself. None of the buyers knew of any claim to his or her car by either Gamble Motor Company or 411 Motors. None of them knew of any problem with regard to obtaining a title certificate.

Each purchaser testified that he or she came to the debtor to buy a car for personal transportation. None had ever been an automobile dealer or worked for a dealer.

Neither 411 Motors nor Gamble Motor Company had a written security agreement with the debtor regarding the automobiles in question.

The purchasers, the dates of purchase, and the cars involved are listed in the table below:

| Purchaser From Tom Woods | Item | Purchase Price | Date of Purchase From Tom Woods | Wholesale Dealer Involved |
|---|---|---|---|---|
| Johnny Reed | 1978 Oldsmobile #3R47F8M7744 | $4,950.00 | 4–18–81 | 411 Motors |
| Ken Shipley | 1979 Cadillac #6D69599168440 | 7,989.88 | 3–5–81 | 411 Motors |
| Kenny Smith | 1979 Chrysler #FH41D9F152239 | 5,074.05 | 12–15–80 | Gamble |
| Robert Avecoff | 1979 Oldsmobile Cutless #3R47F92415126 | 6,261.00 | 4–22–81 | Gamble |
| Dave DeVoss | 1979 Ford Fairmont #9X94F119927 | 4,117.29 | 4–15–81 | Gamble |
| Meredith Holder | 1979 Ford Granada #9W82L153754 | 4,122.00 | 4–19–81 | Gamble |
| Robert Townsend | 1980 Mercury Cougar #OH93F603215 | 6,843.19 | 4–25–81 | Gamble |

Except for Kenny Smith and Ken Shipley, each individual bought his or her car shortly before the debtor's bankruptcy stopped the normal flow of transactions among the debtor, the dealers, and the banks. Consequently the dealers were left

holding the title papers to the cars. They have refused to deliver them to the trustee or the individual purchasers. This has made it difficult for the purchasers to sell the cars or obtain registrations.

The decision in this case is controlled by § 2–403 of the Uniform Commercial Code (UCC) as enacted in Tennessee and by the decision of the Tennessee Court of Appeals in *Couch v. Cockcroft,* 490 S.W.2d 713 (Tenn.App.1972).

Section 2–403 of the UCC provides in part:

> (2) Any entrusting of possession of goods to a merchant who deals in goods of that kind gives him power to transfer all rights of the entruster to a buyer in the ordinary course of business.
>
> (3) "Entrusting" includes any delivery and any acquiescence in retention of possession regardless of any condition expressed between the parties to the delivery or acquiescence and regardless of whether the procurement of the entrusting or the possessor's disposition of the goods have been such as to be larcenous under the criminal law.

Tenn.Code Ann. § 47–2–403.

UCC § 9–307 limits the effect of § 2–403 as to entrusters who have Article 9 security interests in the entrusted goods. Neither Gamble Motor Company nor 411 Motors had or has an Article 9 security interest in the cars in question. When collateral is in the possession of the debtor, a written security agreement is necessary to create an Article 9 security interest. Tenn. Code Ann. § 47–9–203(1). Neither dealer had a written security agreement with the debtor covering the cars in question.

It is clear that by delivering the cars to the debtor the dealers entrusted possession to the debtor, within the meaning of § 2–403. It is also clear that the debtor at the time was a merchant dealing in automobiles. Tenn.Code Ann. § 47–2–104(1).[1]

The result is that whatever understandings or agreements the dealers had as to when title passed to the debtor are irrelevant. The failure to have written agreements deprived the dealers of security interests under Article 9 of the UCC, thereby making § 2–403 control to the exclusion of § 9–307. Under § 2–403 the debtor had the ability to transfer all of the dealers' rights in the cars to buyers in the ordinary course of business.[2]

The dealers' questioning and argument at trial were directed toward showing that the buyers were not buyers in the ordinary course of business as defined in UCC § 47–1–201(9):

> "Buyer in ordinary course of business" means a person who in good faith and without knowledge that the sale to him is in violation of the ownership rights or security interest of a third party in the goods buys in ordinary course from a person in the business of selling goods of that kind but does not include a pawnbroker. "Buying" may be for cash or by exchange of other property or on secured or unsecured credit . . . .

It makes no difference that some of the buyers paid for the cars with the proceeds of loans, either secured or unsecured. The definition provides that buying may be on secured or unsecured credit.

The dealers' remaining arguments were rejected by the Tennessee Court of Appeals in *Couch v. Cockcroft,* 490 S.W.2d 713 (Tenn.App.1972). Nevertheless the court will address the arguments.

The buyers' failure to demand assignment of the title certificates does not mean they bought out of the ordinary course of business. In Tennessee title to a car can be passed to a buyer without assignment of the certificate of title. *Couch v. Cockcroft,* 490 S.W.2d 715–16.

Failure to demand assignment of the title certificates also does not show a lack of

---

1. " 'Merchant' means a person who deals in goods of the kind . . . ."

2. Whatever effect the debtor's right to inspect and reject might have had on when title passed to him is likewise irrelevant.

good faith. Good faith is defined as "honesty in fact in the conduct or transaction concerned." Tenn.Code Ann. § 47–1–201(19). This does not mean a buyer can ignore facts indicating the seller lacks authority to sell, but in this case the buyers did not have knowledge of any such facts.

■ The buyers also did not have knowledge that the sales were in violation of any ownership rights or security interests claimed by the dealers. Even if the buyers knew the debtor did not have the title certificates, that only gave them notice that third parties might have interests in the cars. It did not give them knowledge that the sales were in violation of any ownership rights or security interests claimed by the dealers. *Couch v. Cockcroft,* 490 S.W.2d 716–17. See also Tenn.Code Ann. § 47–1–201(25) (definitions of notice and knowledge).

■ The sales to the buyers conveyed the rights of 411 Motors and Gamble Motor Company. Any subsequent actions by the dealers did not affect the buyers' rights. The buyers are entitled to certificates of title to the cars. The court will enter an order directing the dealers to deliver the title certificates to the trustee or if that is not possible directing the trustee to obtain title certificates from the appropriate authorities.

## II

Before its bankruptcy, the debtor sold a car to William R. Jones, Jr. The court must decide whether the trustee in bankruptcy or one of the defendants, Roy Quintrell, is entitled to the proceeds of the sale. The parties stipulated the facts. They can be summarized as follows.

The debtor was a retail merchant dealing in used cars. At all times relevant, it operated a used car lot on Ringgold Road in Chattanooga, Tennessee.

Roy Quintrell is also a merchant dealing in new and used cars. He sells to the public and to other dealers.

Between March 30 and April 14, 1981, Quintrell sold six used cars to Charles Crowder of Cleveland, Tennessee. Charles Crowder was a used car merchant who did business in Cleveland under the trade name "Big Charlie's Used Cars." Crowder sold the same six cars to the debtor. The debtor put them on its lot and sold them.

One of the cars was sold to William R. Jones, Jr., shortly before the debtor's bankruptcy. When Jones learned of the bankruptcy, he stopped payment on his check to the debtor for the balance of the price, $3,940.84.

The debtor did not pay Charles Crowder for the car, and Crowder in turn did not pay Quintrell.

Quintrell still held the title certificate to the cars. The trustee and Quintrell agreed to furnish a title certificate to the buyer on his payment of the $3,940.84 to the trustee. The trustee now holds this sum subject to the court's decision. There are no other traceable proceeds of the sale.

The parties agree that the buyer was a "buyer in the ordinary course of business" within the meaning of § 1–201(9) of the UCC. The parties also agree that Quintrell did not reserve a security interest in the car, record a lien on the certificate of title, or file with the Secretary of State a financing statement showing a lien on the car.

Finally, neither Quintrell nor Crowder gave the debtor or the trustee notice of intent to reclaim the car pursuant to Uniform Commercial Code §§ 2–507 or 2–702 or Bankruptcy Code § 546(c).

Any question between Quintrell and the trustee as to the buyer's rights in the cars was settled by their agreement to furnish the buyer a title certificate and let their dispute attach to the proceeds only.

Whether Quintrell or the trustee is entitled to the proceeds depends on what rights Quintrell and the debtor had in the car.

If Quintrell had had a perfected security interest in the car, he would have been entitled to the proceeds. It is in effect stipulated that Quintrell did not have a security interest under Article 9 of the UCC. It is also stipulated that Quintrell

did not attempt to exercise a right to reclaim the car. It also appears that Quintrell did not have a security interest arising and perfected under Article 2 of the UCC. See Tenn.Code Ann. §§ 47–2–505 & 47–9–113(a).

Quintrell's argument apparently is that he remained the owner of the car at the time of the sale since he did not intend for title to pass until he surrendered control of the title certificate on receipt of payment for the car.

 In Tennessee title to a car can pass without assignment of the certificate of title. Retaining the title certificate does not prevent title from passing. It is not disputed that the transactions between Quintrell and Crowder and between Crowder and the debtor were sales. The result is that title to the car passed from Quintrell to Crowder and from Crowder to the debtor and from the debtor to Mr. Jones.

It is important to understand that the parties to a sale can agree on when title passes only to a degree. Any retention or reservation of title in the seller after delivery to the buyer amounts to retention of a security interest. Section 2–401 of the UCC provides in part:

> Any retention or reservation by the seller of the title (property) in goods shipped or delivered to the buyer is limited in effect to a reservation of a security interest . . . Unless otherwise specifically agreed title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods, despite any reservation of a security interest . . . .

Tenn.Code Ann. § 47–2–401(1), (2).

The result is that the debtor owned the car at the time of the sale, and the car was free of any security interest claimed by Quintrell. Likewise, Mr. Jones acquired the car free of any claims by Quintrell. Quintrell's retention of the title certificate was not sufficient to create an enforceable security interest under Article 9 of the UCC. Tenn.Code Ann. § 47–9–203(1).

Legally, the trustee is entitled to the proceeds. Quintrell argues, however, that he is entitled to the proceeds on equitable grounds. There was no evidence that the debtor committed any fraud toward Quintrell that would impose a constructive trust on the proceeds in Quintrell's favor. Quintrell is merely an unpaid, unsecured creditor of the debtor. There was no evidence of any trust agreement that would make the proceeds subject to an express trust in Quintrell's favor.

The court will enter an order allowing the trustee to retain the proceeds for the benefit of the estate generally.

This memorandum constitutes findings of fact and conclusions of law. Bankruptcy Rule 752.