In re AUDIOFIDELITY ENTERPRISES, INC., Debtor.

AUDIOFIDELITY ENTERPRISES, INC., Plaintiff,

v.

CONRAD MUSIC, A DIVISION OF ARC MUSIC CORP. and all others similarly situated; Harry Fox Agency, Inc., and Dante Pugliese, Defendants.

Bankruptcy No. 89–00869.

Adv. No. 89–0222.

United States Bankruptcy Court, D. New Jersey.

May 3, 1989.

Ravin, Sarasohn, Cook, Baumgarten, Fisch & Baime, Roseland, N.J. by George Hirsch, for debtor.

Lehman, Wasserman & Jurista, Millburn, N.J. by Steven Z. Jurista, for Creditors' Committee.

Shapiro & Shapiro, Hackensack, N.J. by Robert Shapiro, and Silverman, Shulman & Slotnick, New York City by Andrew Shulman, for Conrad Music and Harry Fox Agency, Inc.

Ravin, Greenberg & Zackin, Roseland, N.J. by Allan Harris, for Dante Pugliese.

## OPINION

WILLIAM F. TUOHEY, Bankruptcy Judge.

This matter comes before the Court today based on three separate pleadings. The debtor, Audiofidelity Enterprises, Inc.

("Audiofidelity") filed an order to show cause on March 2, 1989, which was originally returnable on March 27, 1989, wherein the debtor sought to sell certain inventory out of the ordinary course of business under Bankruptcy Code Section 363. That inventory, as discussed today in the oral argument and as reflected in the papers filed, consists of phonograph records, taped cassettes, and what are referred to as compact discs or "CD's".[1]

A proceeding under Code Section 363 is one that comes under this Court's core jurisdiction in that it deals with the disposition of debtor's inventory and is a core proceeding under 28 United States Code § 157.

The Court particularly notes the Chapter 11 proceeding involving Audiofidelity was duly filed on February 6, 1989. On February 24, 1989 the debtor saw fit to file an adversary complaint naming as defendants Conrad Music, Harry Fox and Dante Pugliese, and in that adversary complaint the debtor attacks a consent judgment that was entered into on January 27, 1989, in the Southern District of New York in a matter docketed as Case No. 85–5821. This consent judgment was entered by the Honorable Judge Broderick of the Southern District of the United States District Court.

In the adversary complaint filed here in the Bankruptcy Court, the Debtor seeks to overturn that judgment asserting that it is a preference under Bankruptcy Code Section 547. On its face, a preference action under § 547 is also a core proceeding under this Court's jurisdiction.

In response to that adversary complaint, an answer has been filed by Conrad and Fox jointly represented by Mr. Schulman and Mr. Shapiro. That answer raises a substantial counterclaim. That counterclaim seeks enforcement of the consent judgment of January 27, 1989, and seeks the further specific remedy of having this Court direct the destruction of the invento-

ry consisting of records, tapes and "CD's" that the debtor wishes to sell.

Now, in the context of that adversary the Conrad/Fox defendants and counterclaimants also filed an order to show cause which was entered on March 21, 1989, and was returnable on March 27th, which was the same return date of the debtor's action to sell its inventory. In the order to show cause brought on by the Conrad/Fox group, they specifically, in said document, ask this Court to authorize the immediate destruction of the inventory, or in the alternative, to vacate the stay pursuant to Bankruptcy Code § 362 so that these defendants may return to the Southern District and attempt to have Judge Broderick or another district court judge order the destruction of the inventory. I view that order to show cause filed by Conrad and Fox as basically a motion for judgment on the pleadings. I think it has been treated that way in the argument and the extensive briefs filed by all sides, and I think I can treat it that way today.

There really is not an underlying dispute as to the facts. It is the conclusions and legal rights and remedies that flow from what amount to the stipulated facts that are before the Court. The Court specifically notes that the issue that comes before me is a delicate one and a difficult one. It requires that this Court balance two equitable interests, on the one hand the debtor having filed under the Bankruptcy Code seeks the protection of this Court so that it may proceed to reorganize itself; or in the alternative, to have an orderly disposition of its assets. Of course, what flows from the Chapter 11 proceeding are the equitable interests of all of the creditors of the Audiofidelity estate, and they run the gamut from the public taxing authorities down to the very adversaries herein, namely Fox and Conrad and the interests that they represent who are also creditors in this proceeding.[2]

1. This opinion was issued as an oral bench opinion. Certain citations have been amplified and appropriate syntax corrected for publication.

2. The consent judgment of January 23, 1989 awarded Fox/Conrad $1,853,744.00.

So, I have, on the one hand, the equities to consider that flow from the Chapter 11 filing of the debtor; on the other hand, we have the equities that are strenuously asserted by Conrad Music and the Harry Fox Agency, and those equities are equally strong and deserve much consideration.

Article 1, Section 8, clause eight of the United States Constitution specifically authorizes a Uniform National System of patent and copyright protection. It was in that context that our Congress has passed the Copyright Statutes, particularly set forth in the United States Copyright Act, 17 United States Code §§ 101–914, and the various sections that have been argued herein at length. So, I must balance the rights of the copyright holders under title 17 of the United States Code versus the rights of the debtors and creditors that come before me under title 11 of the United States Code or Bankruptcy Statutes. That dilemma of trying to balance interests, by the way, is set forth in *Penn Terra Ltd. v. Department of Environmental Resources*, 733 F.2d 267 (3rd Cir.1984). In *Penn Terra*, Judge Garth had before him state environmental issues on the one hand and the bankruptcy issues on the other, but there is language in there that I think is particularly appropriate in guiding this Court to the recognition that a case such as this does require a delicate balancing of the equities.

I specifically find, and, as I say, I do not believe any of these facts are disputed, that long prior to the debtor's chapter 11 filing the parties were engaged in an ongoing copyright dispute in the Southern District of New York. A class action had been certified in the Southern District and that class action certification took place on June 10, 1986. In that litigation the Fox/Conrad group sought to protect the interests of their principals and clients, namely song writers. They asserted in that Southern District litigation that Audiofidelity had breached its responsibility under the Federal Copyright Statutes.

As a result of that lawsuit, on May 20, 1988, after two years of litigation, the parties, Audiofidelity and the Conrad/Fox plaintiffs, negotiated a settlement which allowed Audiofidelity to continue in existence if certain protections were granted to the plaintiffs, the Conrad/Fox plaintiffs. For whatever reason, Audiofidelity breached that settlement agreement. The matter once again returned to the Southern District of New York pursuant to an order to show cause filed by the Conrad/Fox group, and on January 23, 1989, the parties once again entered into an agreement and memorialized it in a consent judgment which was executed by Judge Broderick in the District Court.

Now, that judgment has been placed before me and part of it has been read into the record today at the oral argument, and clearly in that consent judgment there is a specific finding of infringement by Audiofidelity on the copyright interests of the original plaintiffs, the Fox/Conrad plaintiffs. Judge Broderick specifically enjoins the sale and manufacture of any of the songs produced by the members of the class by Audiofidelity. The consent judgment of January 23, 1989, also goes on to fix damages at $1,853,744.

■ In analyzing the remedies and rights of the parties, it is important to note that an injunction is one of the primary methods of relief in copyright infringement enforcement. That principle is recognized in the case of *Arnstein v. Porter*, 154 F.2d, 464 (2nd Cir.1946), *aff'd on rehearing*, 158 F.2d 795 (2nd Cir.1946).

■ As I've examined the copyright cases put forth in the briefs of the parties and in the Court's independent research, one cannot help but come to the conclusion that the injunctive relief granted through the powers and authorities of the Federal District Court system is one of the paramount protections that Congress has granted to the holders of copyrights. I say that taking into consideration the specific language of 17 U.S.C. § 503 which deals with the impounding of records, section 503(b), which allows the district court to destroy or otherwise reasonably dispose of infringing records or tapes, and 17 U.S.C. § 106, which recognizes the exclusive rights in copyrighted works to be within the hands

of the artists who produced the artistic endeavor. What effect then does the consent judgment of January 27, 1989, have on the matters before the Court? I find that the Conrad/Fox defendant-counterclaimants are correct when they assert that should this Court authorize a sale in the context of a bankruptcy liquidation of the offending tapes and records, we would be putting back into the stream of commerce, into the hand of the public at large, the very offending tapes and records which Judge Broderick in his order specifically and permanently enjoined the public from ever hearing.

I do find that that January 27, 1989 consent judgment is a final order and that said final order bound the rights of the parties. Debtor argues strenuously based on the case of *United States v. Swift*, 286 U.S. 106, 52 S.Ct. 460, 76 L.Ed. 999 (1932). This is a 1932 decision of Justice Cardozo. Debtor argues that, based upon *Swift*, the equitable relief as set forth in that January 27th order can be modified or adjusted, particularly under this Court's, the Bankruptcy Court's, equitable powers under Code Section 105, as well as the other specific powers this Court has been granted, to dispose of debtor's assets in an orderly fashion and to reorganize the debtor under Chapter 11. But you must read very carefully Justice Cardozo's specific language in the *Swift* case. I will quote a sentence from page 464 of 52 Supreme Court Reporter, but before quoting I think it must be placed in context that the Supreme Court in that case was being asked to modify a consent decree granting injunctive relief. Justice Cardozo:

There is need to keep in mind steadily the limits of inquiry proper to the case before us. We are not framing a decree. We are asking ourselves whether anything has happened that will justify us now in changing a decree. The injunction, whether right or wrong, is not subject to impeachment in its application to the conditions that existed at its making. We are not at liberty to reverse under the guise of readjusting. Life is never static and the passing of a decade has brought changes to the grocery business

as it has to every other. The inquiry for us is whether the changes are so important that dangers, once substantial, have become attenuated to a shadow.

I'm skipping a few sentences. On the same paragraph:

Nothing less than a clear showing of grievous wrong evoked by new and unforeseen conditions should lead us to change what was decreed after years of litigation with the consent of all concerned.

Now, when you trace the *Swift* case down through our third circuit and other opinions, you will come across the case of *United States Steel Corp. v. Fraternal Association of Steel Haulers*, 601 F.2d 1269 (3rd Cir.1979), wherein then Circuit Judge Aldisert made references to the *Swift* case and held at page 1274, "Although the court has the power to modify a consent decree," citing *Swift*, "a party seeking Rule 60(b) relief bears a heavy burden of showing circumstances so changed that 'dangers, once substantial, have become attenuated to a shadow.'"

I specifically find that the mere filing of the within chapter 11 proceeding and the economic duress that the debtor currently suffers does not rise to a level so as to modify the consent judgment of January 27, 1989, entered in the district court.

In this context I rely on *United States v. Wheeling Pittsburgh Steel Corp.*, 818 F.2d 1077 (3rd Cir.1987). Judge Sloviter wrote the opinion of the panel. On page 1088 Judge Sloviter had occasion to specifically note that:

Although a consent decree is a judicial act, it has many of the attributes of a contract voluntarily undertaken [citations omitted] and a party to a consent decree, having made a "free, calculated and deliberate choice to submit to an agreed upon decree rather than seek a more favorable litigated judgment," bears a burden which "is perhaps even more formidable than had they litigated and lost." *Id.* "Nothing less than a clear showing of grievous wrong evoked by new and unforseen conditions should

lead us to change what was decreed after years of litigation with the consent of all concerned."

He then cites the *Swift* case that I've quoted from, and then Judge Sloviter concludes on page 1088:

It follows that the district court abused its discretion in basing its orders on Wheeling's Chapter 11 filing, its economic losses, the possibility that the Sinter Plant would be closed, and the strike.

Judge Sloviter thus found that the filing of the chapter 11 in the Wheeling case did not justify the turning over of the consent decree that had been negotiated.

The Court notes that *Penn Terra* and *U.S. Wheeling* involved pollution statutes. You might argue or attempt to distinguish cases grounded on pollution statutes and say they deserve a higher place on the pecking order of judgments or decrees. However, the order that is before me from January 27, 1989 is entered in the context of a copyright infringement matter, and I think that also is a type of litigation that this Court must recognize, a prior consent decree that has been entered. We are not dealing with a collection judgment entered in the context of an account receivable matter. We are dealing with property rights created by Congress going back to Article I of the United States Constitution, and those property rights have been protected in a 200 year-old body of case law and statutory law that must be recognized by the bankruptcy court.

Therefore, I will deny the debtor's order to show cause seeking to sell out of the ordinary course its inventory pursuant to Code Section 363, and I will grant the order to show cause in favor of Conrad and Fox, which I am treating as a motion in the context of the separate adversary proceeding for judgment on the pleadings, and I will enter judgment in the adversary proceeding in favor of Conrad and Fox on the counterclaim asserted in the adversary complaints.

Now, there is alternative relief pled in that order to show cause. The initial thrust of the order to show cause seeks an order of this Court ordering the destruction of the offending inventory, or in the alternative, to have this Court vacate the stay so that Conrad and Fox can return to the Southern District to seek that result.

This Court has found that the injunction issued by the Southern District of New York forever bars the sale of the Conrad/Fox inventory,[3] and that said order is a final and enforceable permanent injunction. In the interests of judicial efficiency and further in the interests of preserving the other assets of the estate, destruction of the inventory must follow. The costs of warehousing, etc. will only drain this estate in the future. It would serve no purpose to vacate the bankruptcy stay of Section 362 so that Conrad/Fox can return to the southern district to press for destruction of the inventory.

I will, therefore, grant the order to show cause and order the destruction of the entire Conrad/Fox record, etc. inventory held by the debtor. I realize this remedy is radical and that we are about to destroy $300,000 worth of manufactured product. I have not taken this decision lightly. I have wrestled with it for the past two weeks since the pleadings joined the issue. However, my reading of the copyright statutes convinces me that Congress views this matter extremely seriously and has in its very statute, particularly 17 U.S.C. § 503, provided in the arsenal of protections available to holders of copyrights, the destruction of the offending material.

I sit here under the order of reference as an adjunct of the district court. Inasmuch as the destruction pertains to property of this estate, it is a core proceeding and under my authority which flows from the District Court of New Jersey, and I feel I have the right to enforce Judge Broderick's judgment. In the context that we sit herein, that enforcement requires the destruction of the inventory. To do otherwise

---

**3.** The very narrow window of relief available to the debtor pursuant to Fed.Rule Civ.Practice 60(b) has not been met.

would be to compel this debtor, who is on the verge of perhaps complete insolvency, to preserve an inventory indefinitely into the future with the costs of warehousing and storage. That makes no sense whatsoever. Once we once pass the point of saying Judge Broderick's permanent injunction is enforceable and, in effect, resolves the issues between the parties. We have then found the merchandise can never be sold and never tendered to the public, destruction flows from that as a logical consequence.