**AHCI, INC., Plaintiff–Appellant,**

**v.**

**Thomas A. SHORT, Bank of East Tennessee, Sovran Bank/Central South, Helen Harb and Michael Harb d/b/a Checkers, The Restaurant, Defendants–Appellees.**

Court of Appeals of Tennessee, Eastern Section.

Nov. 18, 1993.

Permission to Appeal Denied by Supreme Court June 6, 1994.

Dudley W. Taylor and Stephen W. Gibson, Dyer, James and Taylor, Knoxville, for appellant.

J. Thomas Jones and Kenneth M. Brown, Bernstein, Stair & McAdams, Knoxville, for appellee Bank of East Tennessee.

## OPINION

SANDERS, Presiding Judge, Eastern Section.

The pivotal issue on this appeal is whether or not the Plaintiff held such title in certain restaurant equipment as to permit it to maintain a suit for conversion against Defendant Bank of East Tennessee for selling the equipment under a security agreement with a third party.

The salient facts in this case are not in material dispute. Although there were originally five Defendants in the case at bar, the issues on appeal relate only to the Plaintiff–Appellant, AHCI, Inc., and Defendant–Appellee Bank of East Tennessee (BET).

In 1987 one Linda Poland borrowed approximately $80,000 from BET to purchase equipment for opening a restaurant in Knoxville called Bon Vivant. Ms. Poland executed an open ended security agreement to BET on all business property "now owned or hereafter acquired by debtor." The security agreement was duly perfected by BET.

In the summer of 1988, Plaintiff AHCI, Inc., borrowed funds from Sovran Bank for the purpose of opening an ice cream shop. The shop was called Plumb Nelly and was located next door to Bon Vivant. Sovran took a perfected security interest in the Plumb Nelly equipment and inventory. The Plumb Nelly business failed in the spring of 1989 and around that same time, Linda Poland took on a partner, Thomas Short, to assist her in running Bon Vivant.

In September, 1989, AHCI entered into an agreement with Poland and Short for the partnership to purchase the Plumb Nelly equipment. The contract provided for monthly payments to be paid by the partnership to AHCI. AHCI would remain responsible for the Sovran loan until it was paid down an additional $10,000, to a principal amount of $30,000, at which point Sovran had apparently agreed to allow the partnership to assume the loan. The contract contained no provision relating to the delivery of title to the equipment nor did the partnership ever receive a bill of sale or any title document, and no security agreement was executed in connection with the sale.

The Plumb Nelly equipment was never moved from the ice cream shop. Rather, Poland and Short arranged for the removal of a portion of the partition wall between the two businesses. In November, 1989, Poland and Short began operating as one business under the name of Bon Vivant.

Short withdrew from the partnership not long after the expansion of Bon Vivant was completed. The partnership made only one payment to AHCI before lapsing into default. Thereafter, Ms. Poland became delinquent on her loan payments to BET as well.

In March, 1990, BET decided to close Bon Vivant and take possession of the equipment under its security agreement. In doing so, it also took the equipment which AHCI had conveyed to Bon Vivant and placed it in a warehouse, all of which was subsequently sold by BET.

AHCI filed suit in which it alleged it sold its equipment to the partnership of Poland and Short; Poland and Short failed to live up to the conditions of the sale and they, accordingly, never received title to the property and AHCI still held title to the property. It alleged the security agreement held by BET was executed by Ms. Poland when she was doing business as a sole proprietorship and the "after acquired property" provision in BET's security agreement could not attach to partnership property. The complaint asked the court to render a declaratory judgment pursuant to T.C.A. § 29–14–101, et seq., and Rule 57, TRCP, declaring the interest of the parties in the property. It also asked for a judgment against BET for compensatory and punitive damages.

Upon the trial of the case, the chancellor found the issues in favor of BET and dismissed the complaint.

AHCI has appealed, saying the court was in error. We cannot agree, and affirm for the reasons hereinafter stated.

■ In her determination of the case, the chancellor held that title to the equipment passed to Bon Vivant on the date of the sale pursuant to T.C.A. § 47–2–401(3)(b). She held that even if AHCI had retained title to the equipment, since it had delivered the equipment to Bon Vivant, its only interest would be a security interest pursuant to T.C.A. § 47–2–401(1) and, since it held no perfected security interest in the equipment, it was not enforceable against "third parties" (BET) pursuant to T.C.A. § 47–9–203(1). We concur in this holding by the chancellor.

The U.C.C. provides, as the chancellor found, that under a sales agreement such as the one between AHCI and the Poland/Short partnership, where goods are to be delivered in place and there is no provision as to when a bill of sale or any other document of title is to be delivered, title passes at the time of contracting. T.C.A. § 47–2–401(3) provides:

(3) Unless otherwise explicitly agreed where delivery is to be made without moving the goods:

(a) if the seller is to deliver a document of title, title passes at the time when and the place where he delivers such documents; or

(b) If the goods are at the time of contracting already identified and no documents are to be delivered, title passes at the time and place of contracting.

We, accordingly hold AHCI divested itself of title to the Plumb Nelly property at the time of the execution of the sales agreement. And a party "cannot recover for conversion of property, the title of which is in another." *Kemble v. Wolfe*, 14 Tenn.App. 545, 550 (1931).

■ The agreement between AHCI and Poland and Short which AHCI insists constitutes a title retained contract is, as pertinent here, as follows:

"This document, entered into in good faith, is between Linda D. Poland and Thomas A. Short d/b/a Bon Vivant, and Ahci, Inc. and Mathis bush.

"The sole and complete reason for this document is to establish the purchase of all equipment, furniture, supplies and any other benefits which may arise from the sale or use of these items located in the Commons at 221 N. Peters Road known as Plumb Nelly.

"For this and the mutual exchange of ten ($10.00) dollars, receipt of which is mutually acknowledged, Bon Vivant agrees to assume a portion of a note entered into between Achi, [sic] Inc. and Sovran Bank (Loan No. 0134–1102466–0–001001) in the amount of principle of $30,000.00 plus pro rated interest. Upon fulfilling their (Bon Vivant's) portion of this agreement, it is understood by both parties that the equipment, rights and use thereof, shall belong then and forever to Bon Vivant. Any and all monthly payments due by Achi, [sic] Inc. and guaranteed by Mathis Bush shall be immediately due monthly and payable to Sovran Bank. Failure to do so shall constitute default on his part and be remedied with a life insurance policy dated July 6, 1989. Sovran note will be signed by Linda D. Poland and Thomas A. Short as required by Sovran.

"It is agreed that Bon Vivant shall begin its initial payment to Achi, [sic] Inc. on or before October 1, 1989 (October's payment) at the following address, the payment being ¾ of the above referenced loan payment due up to $40,000.00

460 Walker Springs Road
Knixville, [sic] TN 37923

and that thereafter on or before the 30th of each month.

"Bon Vivant shall have no other relationship with Achi, [sic] Inc. of any nature."

We cannot agree that this meets the criteria for a title retained contract. In addressing this issue, our supreme court, in *Matthews v. Archie*, 196 Tenn. 417, 268 S.W.2d 334 (1954), said, 268 S.W.2d at 336:

Unless the language of the contract clearly makes out a conditional sale, this Court

will not extend the law of Conditional Sales by implication. . . .

If there is doubt whether or not the contract presented is or is not a contract of conditional sale, the doubt will be resolved against holding such contract a conditional sale. *Great American Indemnity Co. v. Utility Contractors, Inc.,* 21 Tenn.App. 463, 111 S.W.2d 901; *Sweeney v. Mergenthaler Linotype Co.,* 8 Tenn.Civ.App. 244.

■ Even assuming, arguendo, that AHCI is correct in its contention, its interest is limited to an unperfected security interest under the U.C.C. The record shows there was no security agreement executed between AHCI and the partnership. It follow that any security interest held by AHCI must arise by operation of law under Article 2 of the U.C.C., which governs the sale of goods. Section 401(1) of Article 2, codified at T.C.A. § 47–2–401(1) limits the interest of a seller who retains title to the goods but delivers them to the purchaser to that of a security interest. The statute, as pertinent here, provides: "Any retention or reservation by the seller of the title (property) in goods shipped or delivered to the buyer is limited in effect to a reservation of a security interest. . . ."

In *Weaver v. Ford Motor Credit Co. (In re McFarland)*, 112 B.R. 906 (Bankr.E.D.Tenn. 1990), the court said, at 912:

Regardless of the agreement between the buyer and seller concerning title and ownership of the goods, under § 47–2–401 once those goods have been delivered into the possession of the buyer under a sales contract, the most the seller can retain is a security interest.

In *Tom Woods Used Cars v. North Georgia Toyota, (In re Tom Woods )*, 24 B.R. 529 (Bankr.E.D.Tenn.1982), an automobile was delivered to the buyer under a contract of sale. No certificate of title accompanied the car and there was no security agreement. The *Woods* court said, at 530:

Once an automobile is delivered to the buyer, nondelivery of the title certificate does not prevent title from passing to the buyer, does not give the seller any rights greater than a security interest, and in fact does not even give the seller a security interest unless there is a written agree-

ment. *See* Tenn.Code Ann. § 47–9–203(1); *In re Tom Woods Used Cars, Inc.,* 21 B.R. 560 (Bkrtcy.E.D.Tenn.1982) (*Jahn v. Quintrell* ).

Thus, even assuming AHCI retained title to the Plumb Nelly equipment under the terms of the sales contract, it is clear from the authorities quoted above that AHCI's interest is limited to an unperfected Article 2 security interest arising under T.C.A. § 47–2–401(1).

Based on the foregoing, even if we assume AHCI did retain title to the equipment, it did not hold a perfected security interest which was enforceable against BET. *See* T.C.A. § 47–9–203(1).

In the case of *Mammoth Cave Production Credit Association v. Oldham,* 569 S.W.2d 833 (Tenn.App.1977), the court, in addressing trover and conversion, said: "A conversion, in the sense of the law of trover, is the appropriation of the thing to the party's own use and benefit, by the exercise of dominion over it in defense of plaintiff's right. . . . It seems true ordinarily that conversion can be maintained only if the plaintiff can show possession or a right to immediate possession of the item converted at the time of the alleged conversion." 569 S.W.2d at 836, 837. In the case at bar, AHCI did not have possession or the immediate right to possession of the alleged converted property.

The issues are found in favor of the Appellee. The decree of the chancellor is affirmed. The cost of the appeal is taxed to the Appellant and the case is remanded to the trial court.

FRANKS and McMURRAY, JJ., concur.