In re W. J. O'QUINN and Betty
O'Quinn, d/b/a M & W
Supermarket, Debtors.

**Bankruptcy No. 79–10386.**

United States Bankruptcy Court,
N. D. Mississippi.

July 24, 1981.

Mitchell, McNutt, Bush, Lagrone & Sams, Tupelo, Miss., Guy Mitchell, Jr., Tupelo, Miss., of counsel, for Bank.

Jacob C. Pongetti, Columbus, Miss., Trustee.

Sam M. Reedy, Fulton, Miss., for debtors/defendants.

## MEMORANDUM OPINION

EUGENE J. RAPHAEL, Bankruptcy Judge.

The O'Quinns operated a retail business in or near Fulton, Mississippi under the trade name of M & W SUPERMARKET. They filed a petition under Chapter 7 of the Bankruptcy Code on December 17th, 1979. On notice to the trustee, the debtors and the debtors' attorney, First Citizens National Bank of Fulton, Mississippi (hereafter, the bank) filed an application pursuant to Section 554(b) of Title 11 for an order directing the trustee to abandon debtors' inventory. The trustee filed an objection and a request for a hearing and the matter was tried before me on due notice to the parties.

On November 3rd, 1978, the debtors borrowed $5,000.00 from the bank and executed a promissory note on that date which was payable on April 30th, 1979. At the same time, the debtors executed a security agreement which, by its terms, granted to the bank a security interest in "all inventory present and in the future housed in M & W Supermarket". The note was not paid at maturity and thereafter was renewed by the bank, and on June 5th, 1979, the debtors executed a new note in the principal amount of $10,000.00, and received an additional advance at that time of $5,000.00. At the time of the last mentioned transaction, the bank also received a security interest in the debtors' store equipment. The security interest in the equipment is not here in controversy.

At the time of the execution of the $5,000.00 note in November, 1978, financing statements were prepared. One such financing statement was filed in the office of the Chancery Clerk of Itawamba County, Mississippi on November 14th, 1978. Another financing statement was filed in the office of the Secretary of State of Mississippi on November 15th, 1978. No question is raised as to the financing statement that was filed in the Chancery Clerk's office. With respect to the financing statement that was filed in the Secretary of State's office, that financing statement appears to have been signed by the bank, but on the certified copy of the financing statement which was filed in the Secretary of State's office, no signature by the debtors, or either of them, appears. The trustee maintains that the absence of such signatures is fatal to the perfection of the security interest claimed by the bank. The bank tried to explain the absence of the signatures by stating that the financing statement that was filed in the Secretary of State's office must have been a carbon copy of the other financing statement and that it was so far down in the pile of copies that the carbon simply would not carry the signatures all

the way through. The bank also made the contention that the absence of the signature was a "minor error" which could be disregarded under Subdivision 8 of Section 9–402 of the Uniform Commercial Code (Mississippi Laws of 1972, Section 75–9–402).

I find that the bank's contention that the signatures on the forms that were filed in the Secretary of State's office simply did not go through all of the carbons is not borne out by the evidence. The financing statements that were filed in both the Chancery Clerk's office and in the Secretary of State's office were prepared on printed forms which are available from stationery stores in the state and which have been approved as to form by the Secretary of State. These forms come in packets, interleaved with carbons (Bank's Exhibit "7"). In the set that is used when filing is to take place in only one office, there are five copies of the financing statement in each set. The top copy is labeled "(1) Filing Officer Copy-Alphabetical". The copy directly underneath number one is labeled "(2) Filing Officer Copy-Numerical"; the next copy down is labeled "(3) Filing Officer Copy-Acknowledgment"; the next copy down is labeled "(4) Secured Party Copy"; the final copy on the set is labeled "(5) Debtor Copy". Where there is a necessity for filing in more than one office, a second set of forms labeled at the top "(for dual filing only)" may be used. These sets for dual filing contain only three copies.

The trouble with the bank's theory that the two sets of forms were prepared together and signed together in one packet at one time is twofold. The sets are interleaved with carbons, but there is no carbon supplied for the form in each set which is labeled number "1". While each of the sets is interleaved with carbon, there would be no carbon for the number "1" copy of the second set, which, according to the bank, would be the copy the bank filed in the Secretary of State's office. It would have been necessary for the typist at the bank to insert her own carbon in order for that copy to come out, either in typing or for the signature. The copy that was filed in the Secretary of State's office, however, does not appear to be a carbon copy. It has none of the fuzziness that a carbon copy (especially a sixth carbon copy) would display. It is itself clearly an original. I find that the copy that was filed with the Secretary of State was not a carbon copy of the copies that were filed in the Chancery Clerk's office, but was prepared as an original and I further find that it was not signed by the debtors, or by either of them.

The absence of the debtors' signatures on the copy filed with the Secretary of State is fatal. The Supreme Court of Mississippi has so held. *The Traveler's Indemnity Company v. First National Bank of Jackson* (Miss.1979), 368 So.2d 836.

The financing statement in that case was filed prior to the adoption by Mississippi in 1977 of the 1972 Revision of Article 9 of the Uniform Commercial Code. Revised section 75–9–402 contains a new sentence at the end of paragraph (1) of that section, which reads: "A carbon, photographic or other reproduction of a security agreement or a financing statement is sufficient as a financing statement if the security agreement so provides or if the original has been filed in this state".

The bank contends that it comes within the provisions of this amendment on the theory that the "original" was filed in the Chancery Clerk's office and that the financing statement that was filed with the Secretary of State was a carbon or photographic reproduction of that original. I think, however, that this contention must fail for two reasons. In the first place, the paper that was filed with the Secretary of State does not appear to be a copy. It appears to be an original. Furthermore, if it is a copy, it is not a complete copy, since it lacks the signatures. In my opinion only a complete reproduction of the original would qualify under the sentence above quoted. I hold that a copy or reproduction which does not show the signatures does not qualify under that sentence. While I have not been able to find any case which so holds, I do find support in the "1972 Official Comment" to the new section 75–9–402. In paragraph 2 of that Official Comment we find this sentence: "Sometimes more than one copy of a financing statement or of a security agreement used as a financing statement is need-

ed for filing. In such a case the section permits use of a carbon copy or photographic copy of the paper, *including signatures*" (emphasis supplied).

Accordingly, I hold that the bank did not have a perfected security interest in the debtors' inventory and that the trustee must prevail over the bank. The inventory, other than perishables, was sold by consent of both parties and with the authority of the court, and the proceeds of that sale are in the hands of the trustee. I hold that these proceeds belong to the trustee, free of the lien claimed by the bank. The record also shows that there were perishables on hand at the time when the petition was filed; that, at that time, the debtor turned the keys to the store premises over to the bank and that the bank disposed of the perishables. The bank must now account to the court and to the trustee for the proceeds of the sale of those perishables. If the parties are in agreement as to the amount that was obtained from the sale of the perishables, a judgment may be submitted disposing of all issues in this proceeding. If the parties cannot agree on the amount for which the bank is accountable by virtue of the sale of the perishables, the court should be so advised promptly, and that issue will then be set down for hearing.