In re PILZ COMPACT DISC, INC. (Consolidated with Pilz Entertainment, Inc., No. 96–16833; Pilz Music, Inc. No. 96–14809; Pilz America, Inc. No. 96–16832), Debtor.

Bankruptcy No. 96–14808F.

United States Bankruptcy Court,
E.D. Pennsylvania,
Philadelphia Division.

Jan. 7, 1999.

Paul B. Maschmeyer, Ciardi, Maschmeyer & Karalis, P.C., Philadelphia, PA.

Andrew N. Schwartz, Philadelphia, PA, Trustee.

David Chanin, Tannenbaum & Chanin, LLP, Philadelphia, PA.

Michael H. Reed, Pepper, Hamilton LLP, Philadelphia, PA.

Alan L. Shulman, Silverman & Shulman, P.C., New York City.

Robert H. Levin, Leon R. Barson, Adelman Lavine Gold and Levin, P.C., Philadelphia, PA, for Debtor.

Edmond M. George, Obermayer, Rebmann, Maxwell & Hippel LLP, Philadelphia, PA.

Kevin P. Callahan, Assistant U.S. Trustee, Office of U.S. Trustee, Philadelphia, PA.

## MEMORANDUM

BRUCE I. FOX, Bankruptcy Judge.

Andrew N. Schwartz, the chapter 7 trustee of the consolidated estates of Pilz Compact Disc, Inc., Pilz Music, Inc., Pilz Entertainment, Inc. and Pilz America, Inc., has filed a motion to abandon certain inventory of the debtors. United Distribution Services, Ltd. (referred to by the parties as "UDS") has filed a "limited objection" to the trustee's requested relief. In addition, an objection to abandonment was filed by The Harry Fox Agency, Inc. (referred to by the parties as "HFA").[1] First Union National Bank also participated in this hearing and has filed what it terms a "statement of position."

As will be discussed below, all the parties agree that the inventory in question is of no value to the estate and should not be administered by the chapter 7 trustee. However, they differ markedly in their approaches to the appropriate disposition of this inventory. (*See* Trustee's Memorandum, at 9 n. 3.)

The bankruptcy trustee desires to abandon any interest in this asset, with the asset thereby leaving the estate and reverting to the debtor. Alternatively, the trustee is willing to abandon the asset to HFA. (Trustee's Post-hearing Memorandum, at 11 n. 4.) HFA has no desire to have the property abandoned to it; instead, HFA contends that the trustee should be compelled to destroy this inventory.[2] First Union Bank argues that the trustee should abandon the inventory to

---

1. An objection was also filed by an entity known as Easy Street Records, Inc. Easy Street asserted in its objection that it "may" have a property interest in some of the inventory sought to be abandoned. Easy Street alleged that the trustee should deliver to it any property in which it had an ownership interest, rather than abandon such property back to the debtor.

   Unfortunately, Easy Street did not attend or participate in the hearing on the trustee's motion. Its allegations are unproven and its objection must be denied.

2. The objection of HFA suggested that the Pilz entities or their officers may have violated certain criminal provisions of the federal copyright statute. *See generally* 17 U.S.C. § 506. I was concerned that the United States Attorney might oppose the destruction of the inventory as this would make proof of any crime difficult to dem-

onstrate, and so directed that the chapter 7 trustee notify the United States Attorney for the Eastern District of Pennsylvania of his request to abandon and of the objections thereto. In response, the Chief of the Fraud Section of the United States Attorney for the Eastern District of Pennsylvania filed a declaration stating that the United States Attorney did not oppose destruction of the inventory so long as "one copy of each phonorecord to be destroyed is preserved for me as evidence in a possible prosecution and furnished to me upon my request."

For the reasons to be later discussed, I shall not compel the chapter 7 trustee to destroy this inventory. Thus, I shall not compel the trustee to preserve copies for the benefit of the U.S. Attorney, but will allow the U.S. Attorney a limited opportunity to acquire a copy of each phonorecord.

UDS (with certain conditions imposed). And UDS supports the trustee's intention to abandon the property but only if abandonment preserves its asserted "lien interest" in the assets; UDS opposes any abandonment to HFA or any destruction of the inventory. *See* UDS Objection, ¶ 11; UDS Memorandum, at 2 n. 1.

All parties in interest were afforded the opportunity to present evidence in support of their positions. After consideration of the evidence offered, the following facts were proven.

## I.

On May 23, 1996, Pilz Compact Disc, Inc. and Pilz Music, Inc. filed voluntary petitions in bankruptcy under chapter 11. About two months later, similar bankruptcy petitions were filed on behalf of Pilz Entertainment, Inc. and Pilz America, Inc.[3] As was described in my order dated November 25, 1996,[4] at the time of these bankruptcy filings, Pilz Compact Disc was engaged in the business of manufacturing compact discs for sale by Pilz Music and unrelated third parties. Pilz Entertainment held licensing or sublicensing agreements with various licensors, including HFA. *See* Order of Nov. 25, 1996, at 2. Pilz America acted as a holding company for the other three affiliates.

HFA describes itself "as a licensing royalty collection and auditing agent on behalf of music publishers, who are copyright owners of musical compositions and proprietors of musical compositions." N.T., at 5 (Sept. 24, 1998). One of the largest claims against the Pilz entities is held by Corestates Bank, N.A. (now First Union, N.A.). At the beginning of this bankruptcy case, there had been an agreement reached between Corestates and Pilz Compact Disc to sell all of the debtor's inventory to a new entity controlled by the debtor's officers.[5] However, this agreement was opposed by HFA on the basis that some or all of the inventory sought to be transferred to the new entity involved unlicensed phonorecords[6] and therefore violated federal copyright law.[7] In light of these concerns, Corestates released any lien that it had on the debtor's inventory in 1996, and the transfer of inventory to this new entity did not take place.[8]

Corestates and HFA thereafter opposed the liquidating chapter 11 plan proposals submitted by Pilz Compact Disc and its official committee of unsecured creditors. Instead, HFA and Corestates supported conversion of the chapter 11 case to one under chapter 7.[9] (The United States trustee desired dismissal of the chapter 11 case.) In light of the "blocking position" held by these two creditors,[10] I agreed that the debtor

---

**3.** Pilz Compact Disc, Inc., Pilz Entertainment, Inc., and Pilz Music, Inc. are wholly owned subsidiaries of Pilz America, Inc. Pilz America, Inc., in turn, is a wholly owned subsidiary of Reiner Pilz, GmbH, a German corporation. The German concern is involved in its own insolvency proceeding in Germany, and the trustee in the foreign action was made aware of these bankruptcies but has never appeared or otherwise taken any position on any aspect of these cases. *See* Order Dated November 25, 1996, at 2 n. 1.

**4.** I take judicial notice of this prior order under Fed.R.Evid. 201 (as incorporated by Fed. R.Bankr.P. 9017), as well as of the docket entries in the Pilz cases and the filing of various pleadings therein. *See Maritime Elec. Co., Inc. v. United Jersey Bank,* 959 F.2d 1194, 1200 n. 3 (3d Cir.1991) *In re Edwards,* 228 B.R. 552, 554 n. 1 (Bankr.E.D.Pa.1998) (Dec. 15, 1998, Sigmund, B.J.); *see generally In re Indian Palms Associates, Ltd.,* 61 F.3d 197 (3d Cir.1995).

**5.** *See* Notice ... to Retain Disc Acquisitions, Inc. ...., docket entry # 55 in Pilz Music, Inc.

(Bankr. No. 96–14809); N.T., July 3, 1996, docket entry # 59 (Pilz Compact Disc, Inc.).

**6.** This is a statutorily defined term under federal copyright law. *See* 17 U.S.C. § 101.

**7.** *See* Answer and Objections of The Harry Fox Agency, Inc., docket entry # 56 (Pilz Music, Inc.); Answer and Objections of The Harry Fox Agency, Inc., docket entry # 43 (Pilz Compact Disc).

**8.** *See* N.T., July 3, 1996, docket entry # 59 (Pilz Compact Disc, Inc.).

**9.** *See* Docket entries ## 133, 134 (Pilz Compact Disc, Inc.).

**10.** A "blocking position" enables a creditor to prevent confirmation over its objection. *See generally Citicorp Venture Capital, Ltd. v. Committee of Creditors Holding Unsecured Claims,* 160 F.3d 982, 985 (3d Cir.1998).

would be unable to reorganize under chapter 11 and relief under section 1112(b) was appropriate. However, rather than dismiss the case, I concurred with the positions of Corestates and HFA and entered an order converting the chapter 11 case of Pilz Compact Disc (and ultimately the other three Pilz entities) to chapter 7.[11] In so doing, I anticipated that the chapter 7 trustee would liquidate the debtors' inventory for the benefit of all unsecured creditors.[12]

The chapter 7 trustee of the consolidated estate has tried to sell the debtors' inventory and has only partially succeeded. This inventory, which was very extensive, is located in a large warehouse rented by the debtor. At no time has the trustee ever moved the inventory from its prepetition location. The trustee engaged the lessor, or an affiliate of the lessor (N.T., at 7, Sept. 10, 1998), to catalog and sell the inventory.[13] *See* Ex. HFA-8 (order of May 29, 1997 granting the trustee's request to engage UDS as "liquidator"). Certain inventory (about 25% of the total, *see* N.T., at 17, Sept. 10, 1998) was viewed as being in the public domain and (after resolving an objection by HFA) was sold by the trustee.[14]

The unsold, remaining inventory, located at 54 Conchester Road, Conshohocken, PA, consists of about 1.5 to 2 million compact discs in different stages of production. (N.T., at 14–16, Sept. 10, 1998.) This inventory involves musical compositions not in the public domain and can only be sold under

federal copyright law by the trustee if he has valid licenses. HFA presented testimony and corroborative documents, and the trustee does not dispute, that the debtors either never had a valid license for all their manufactured phonorecords or had any such licenses revoked due to their failure to pay royalties or provide a written accounting of manufacture and sales. (However, the evidence does not disclose any copyright infringement actions having been brought by HFA or its principals against the debtors, or their principals.)

As a result, the present bankruptcy estate does not consist of inventory for which the trustee, as the representative of the estate, has a valid license to sell. To the extent that any party initially suggested, in connection with this motion, that the trustee should not abandon this property because either the estate possesses or can obtain valid copyright licenses from the principals of HFA, I read all the post-hearing submissions to the contrary.

In other words, I view it as uncontested that all of the remaining inventory of this bankruptcy estate is unlicensed. Moreover, it is equally uncontroverted that the trustee has attempted to negotiate a licensing agreement with HFA but without success. (N.T., at 8–9, Sept. 10, 1998.) HFA seeks certain conditions in return for the licenses which

---

**11.** Upon request, the estates of the four Pilz affiliates were substantively consolidated after conversion and one person, Mr. Schwartz, was chosen under sections 701 and 702 as chapter 7 trustee for the estate of the consolidated entity.

**12.** In my order of November 25, 1996, I quoted the following statement made by counsel to HFA at the hearing on the conversion or dismissal of the chapter 11 case of Pilz Compact Disc to support this belief that the inventory would be sold by a chapter 7 trustee:

The Harry Fox Agency will not vote for any plan proposed by the Creditors' Committee. It will not vote for any plan proposed by the debtor.... The Harry Fox Agency will enter into an agreement with a Chapter 7 trustee for the sale and disposition of the inventory that is subject to the claims of Harry Fox Agency.... It will enter into such an agreement on the

condition that the present management of the debtors are out of the place....
Order of Nov., 25, 1996, at 7 n. 5.

**13.** A separate motion has been filed in this bankruptcy case in which it is alleged that the debtor subleases the warehouse from an entity known as Kuys Leisure Group, an affiliate of UDS.

**14.** I decline HFA's invitation to convert the trustee's abandonment motion into litigation addressing the estate's liability, if any, to the lessor for unpaid rent, or the lessor's liability to the estate, if any, for receipt of improper payments or retention of sales proceeds. Parties in interest are free to file appropriate pleadings, upon which these issues may be considered after adequate notice and with ample opportunity for all parties to prepare for trial. The sole issue presently before me is whether the trustee's request to abandon property should be granted.

the trustee considers imprudent to accept. (N.T., at 24, 130–32, Sept. 10, 1998.) [15]

Thus, this unsold inventory remains in the warehouse location originally rented by the debtor, unable to be sold by the trustee. Moreover, in the course of this bankruptcy case, the trustee has paid the lessor certain post-petition rents and seeks to abandon the property to reduce the future rent exposure of the estate.[16]

The trustee has not been in communication with the officers of the Pilz companies for some time, and does not know their present location. Further, the debtor companies are not operating. The trustee does not believe there is any likelihood that he can reach some accord with HFA that would enable him to sell the estate's remaining inventory without violating federal copyright laws. (N.T., at 8–9, Sept. 10, 1998.)

The trustee testified that the estimated cost for removing and destroying the inventory stored in the warehouse ranges from $12,000.00 to $42,000.00. (N.T., at 15–16, Sept. 10, 1998.) This estimate assumes that the inventory has already been placed at the warehouse loading dock. (N.T., at 17, Sept. 10, 1998.) There would be additional costs involved in moving such a large inventory to the loading dock. HFA offered at the hearing to pay the one-half the cost of removing and destroying the inventory, or $20,000.00, whichever is less.

## II.

### A.

11 U.S.C. § 554(a) governs the trustee's right to abandon property of the estate upon motion. The statute provides:

(a) After notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate.

■ In general, "[s]ection 554 of the Code serves the purpose of expeditious and equitable distribution by permitting the trustee to abandon property that consumes the resources and drains the income of the estate." *In re Smith–Douglass, Inc.,* 856 F.2d 12, 16 (4th Cir.1988). Abandonment should only be approved when property either is a "burden" to the estate or of inconsequential value and benefit to the estate, *see, e.g., In re K.C. Mach. & Tool Co.,* 816 F.2d 238, 245 (6th Cir.1987), issues upon which the trustee, as the moving party, has the evidentiary burden.

■ Here, the chapter 7 trustee did attempt to sell the debtors' inventory, but could not do so without violating federal copyright law and exposing the estate to damage claims under 17 U.S.C. § 504 (which may include statutory damages under section 504(c)). If the inventory could be sold for a measurable sum, then it would have value to the estate and abandonment would not be considered unless the costs of storage and sale exceeded the likely proceeds of sale. *See In re K & C Mach. & Tool Co.,* 816 F.2d at 247; *see generally Matter of Taxman Clothing Co.,* 49 F.3d 310, 315 (7th Cir .1995); *In re O'Quinn,* 12 B.R. 872 (Bankr.N.D.Miss. 1981). In this instance, no party presently suggests that this inventory could be sold by the trustee in a manner which would benefit the estate. Further, there appears to be no disagreement that the inventory which cannot be sold is either valueless to the estate or burdensome to it, given the estate's potential liability for storage costs. *See generally In re Audiofidelity Enterprises, Inc.,* 103 B.R. 544, 548–49 (Bankr.D.N.J.1989).

Thus, all parties accept that the trustee has met his evidentiary burden in demonstrating that this inventory is not a useful asset to the consolidated bankruptcy estate. Further, all agree that the present circumstances—with the inventory remaining property of the estate and sitting idly in a warehouse—should be altered.

### B.

HFA adamantly opposes "abandonment" by the trustee under section 554(a) because it

---

**15.** HFA and UDS each blame the other for the trustee's inability to reach a licensing agreement to sell the inventory.

**16.** The parties may dispute the extent of the estate's exposure for administrative rent. However, there appears to be no dispute that the lessor has demanded additional rent from the trustee.

considers such abandonment a method of disposition of the inventory which would be very costly to the estate. It reasons as follows.

Section 501(a) of the United States Code, Title 17, provides generally that "[a]nyone who violates any of the exclusive rights of the copyright owner as provided by sections 106 through 118, or of the author as provided in section 106A(a), or who imports copies or phonorecords into the United States in violation of section 602, is an infringer of the copyright or right of the author, as the case may be." Section 106(3) of the copyright statute (which is incorporated in section 501) states:

> Subject to sections 107 through 120, the owner of copyright under this title has the exclusive rights to do and to authorize any of the following:
>
> \* \* \* \* \* \*
>
> (3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending . . .

Therefore, a copyright infringer is one who "distributes" unlicensed phonorecords. *See, e.g., Peer Intern. Corp. v. Luna Records, Inc.,* 887 F.Supp. 560 (S.D.N.Y.1995).

17 U.S.C. § 101 defines various terms used in the federal copyright statute; however, the term "distribute" is not among them. HFA refers to section 115(c)(2) and concludes that the term distribute is defined therein. This subsection states:

> (2) Except as provided by clause (1), the royalty under a compulsory license shall be payable for every phonorecord made and distributed in accordance with the license. For this purpose, and other than as provided in paragraph (3), a phonorecord is considered "distributed" if the person exercising the compulsory license has voluntarily and permanently parted with its possession.

HFA also refers to the following legislative history surrounding section 115(c)(2):

> Section 115(c)(2) [subsec. (c)(2) of this section] states that "a phonorecord is considered 'distributed' if the person exercising the compulsory license has voluntarily and permanently parted with its possession." For this purpose, the concept of "distribution" comprises any act by which the person exercising the compulsory license voluntarily relinquishes possession of a phonorecord (considered as a fungible unit), regardless of whether the distribution is to the public, passes title, constitutes a gift, or is sold, rented, leased, or loaned, unless it is actually returned and the transaction canceled. Neither involuntary relinquishment, as through theft or fire, nor the destruction of unwanted records, would constitute "distribution."

H.R.Rep. No. 94–1476, at 154–55, 94th Cong. 2nd Sess. (1976).

In HFA's syllogism, by abandoning the inventory, the trustee would have "voluntarily and permanently parted with [a phonorecord's] possession." Thus, it argues that abandonment by a bankruptcy trustee constitutes a "distribution" of unlicensed phonorecords, which is a copyright infringement. And, as I mentioned earlier, one who infringes upon the rights of a copyright owner is subject to damages under section 504 which may include "actual damages" or "statutory damages." Statutory damages are subject to the discretion of the court, *see, e.g., Broadcast Music, Inc. v. DeGallo, Inc.,* 872 F.Supp. 167, 169 (D.N.J.1995), and may be as high as $100,000.00 per work involved. 11 U.S.C. § 504(c)(2); *see generally Walt Disney Co. v. Powell,* 897 F.2d 565 (D.C.Cir. 1990).

While I doubt that HFA would expect that the estate is likely to be assessed the maximum statutory penalties were the trustee to abandon the unlicensed inventory, it clearly does contend that the estate is likely to have significant liability. HFA Memorandum, at 14. Therefore, HFA argues not that the inventory is valuable to the estate, but that the exercise of abandonment would be very costly and thus harmful to the estate. If the purpose of abandonment is to prevent useless estate property from diminishing the amount to be distributed to creditors, abandonment would not, in the view of HFA, achieve that purpose in this instance.

Further, HFA contends that the only reasonable disposition of this property by the trustee—indeed, the only legal course of action—is to destroy it.

### C.

At the outset, I note that HFA's position is not completely consistent. If HFA were correct, then it would follow that this bankruptcy estate would be liable for copyright infringement if the trustee did absolutely nothing with the property and allowed this bankruptcy case to close without ever administering this asset. By virtue of section 554(c), unadministered property is statutorily abandoned to the debtor at the conclusion of the case. There is little practical distinction between abandonment achieved by motion under section 554(a) and abandonment achieved by inaction under section 554(c). *See generally, e.g., In re Olson,* 930 F.2d 6, 8 (8th Cir.1991).

■ Further, HFA's argument leads to the conclusion that a serious copyright infringement occurred when the debtor's chapter 11 case was converted to chapter 7 (in part at HFA's request), because the controlling interest in the inventory was transferred from the debtor in possession to the chapter 7 bankruptcy trustee. As will be discussed, the effect of abandonment is to divest the trustee with any interest in property. If such a divesture · constitutes a "distribution" of inventory for purposes of copyright infringement then it follows that the vesting of such an interest in the trustee upon conversion to chapter 7 (after the appointment and qualification of the trustee) would also be a distribution. Yet, HFA never suggested that conversion of these cases to chapter 7 would constitute a violation of federal copyright law.[17]

Given the logical breath of this position, one would expect at least one reported decision addressing the effects of conversion or abandonment as a method of copyright infringement. However, neither I nor HFA (nor any other party) has uncovered any court reaching or even considering HFA's argument. I attribute this silence to the long recognized understanding concerning the meaning of "abandonment" in the bankruptcy context.

### D.

Although there were no provisions of the former Bankruptcy Act of 1898 which expressly provided the bankruptcy trustee with a general right of abandonment of estate property (there were some specific provisions, such as former 11 U.S.C. § 110(a)(2), which required the trustee to act in some way or title to certain property would revest in the bankrupt), the concept of abandonment has long been judicially accepted under federal bankruptcy law. For example, as expressed in *Loveland on Bankruptcy,* § 151 at 443 (3d ed.1907):

> It has long been a recognized principle of bankruptcy law that a trustee is not bound to take property of an onerous or unprofitable character, or property which will be a burden instead of a benefit.... Where the trustee elects not to take the property or right of the bankrupt and charge the estate with it, the property and right, whatever it is, remains in the bankrupt.

(footnotes omitted); *accord, e.g., First Nat. Bank v. Lasater,* 196 U.S. 115, 118–19, 25 S.Ct. 206, 49 L.Ed. 408 (1905) ("We have held that trustees in bankruptcy are not bound to accept property of an onerous or unprofitable character, and that they have a reasonable

---

17. Given HFA's reference to the House Report connected with the passage of the Copyright Act of 1976, it may be forced to take this inconsistent position. If the conversion of this case from chapter 11 to chapter 7 were viewed as a "distribution" of unlicensed phonorecords from the debtor to the trustee, then abandonment would be viewed as a return of this inventory to the debtor. The section of the House Report quoted above states that there is no "distribution" if the property "is actually returned and the transaction canceled." H.R.Rep. No. 94–1476, at 155.

Since I do not agree with HFA that abandonment constitutes a distribution in the copyright infringement sense, I need not consider whether there was a distribution upon the bankruptcy conversion in this case. Further, to resolve the narrow issue in this contested matter, I need not analyze whether a distribution occurs under federal copyright law whenever a trustee has the right to control unlicensed phonorecords.

time in which to elect whether they will accept or not. If they decline to take the property, the bankrupt can assert title thereto").

Under the former Bankruptcy Act of 1898, the bankruptcy trustee (upon appointment and qualification) formally took legal title to property of the estate. Former 11 U.S.C. § 110(a). However, when the trustee elected to abandon property, the effect was as if the trustee never held any property interest and that title had always remained with the debtor. As explained in a respected treatise analyzing that prior statute:

> Abandonment of an asset by the trustee divests the trustee of his title. This loss of title is irrevocable.... Revestment of the title to abandoned property in the bankrupt is the corollary of divestment of the trustee. The question as to just how revestment operates, whether as a reacquisition of title or as a revival of the former title by means of a relation back, has not always been answered with desirable clarity, due to the fact that such an answer is not often essential to the case at hand. But where the issue has been squarely raised *it has been held that the bankrupt after abandonment holds the title in the same manner as if it had never been in the trustee.* Due to this relation back, the bankrupt may dispose of property in the interval between bankruptcy and abandonment.

L. King, 4A *Collier on Bankruptcy,* ¶ 70.42, at 512–14 (14th ed.1978) (footnotes omitted) (emphasis added); *accord* Henderson, 2 *Remington on Bankruptcy,* § 1147, at 630 (rev.1956) ("But the abandonment reverts back to the date of filing of the bankruptcy petition ...").

These principles of abandonment under the Bankruptcy Act just quoted stem, at least in part, from the holding in *Brown v. O'Keefe,* 300 U.S. 598, 57 S.Ct. 543, 81 L.Ed. 827 (1937). There, the Court explained:

> We dismiss with a few words the petitioner's contention that at the moment of bankruptcy he lost the title to the shares, and became relieved thereby of the liabilities attendant upon ownership, though his name was left continuously on the stock book of the bank.... Whatever title or inchoate interest may have passed to the trustee was extinguished by relation as of the filing of the petition when the trustee informed the court that the shares were burdensome assets, and was directed by the court to abandon and disclaim them.... In such case "the title stands as if no assignment had been made." *Sessions v. Romadka, supra,* 145 U.S. 29, at page 52 [12 S.Ct. 799, 36 L.Ed. 609] ... A precise analogy is found in the law of gifts and legacies. Acceptance is presumed, but rejection leaves the title by relation as if the gift had not been made.... For the purposes of the case at hand the result will be the same whether title is conceived of as remaining in the bankrupt or as afterwards reverting.

*Id.,* at 602–03, 57 S.Ct. 543 (citations omitted).

The present bankruptcy statute alters the concept that a bankruptcy trustee becomes vested with title to estate property. *Accord, e.g.,* L. King, 5 *Collier on Bankruptcy,* ¶ 541.-LH[3][b], at 541–92 (15th ed. rev.1998). Under the Code, section 541 creates an estate consisting of the debtor's property interests and the bankruptcy trustee is given the right to control those interests, rather than actual title to the property. *Id.; In re Manchester Heights Associates, L.P.,* 165 B.R. 42, 44 (Bankr.W.D.Mo.1994). Further, the present statute codifies the trustee's general power to abandon property in section 554. However, it is understood that such codification did not modify the general principles surrounding abandonment which had been articulated under the former act, even though title to property never vests in the trustee. *Accord, e.g., Midlantic Nat. Bank v. New Jersey Dept. of Environmental Protection,* 474 U.S. 494, 106 S.Ct. 755, 88 L.Ed.2d 859 (1986).

Thus, it has been explained:

> Abandonment under Code § 554 removes property from the bankruptcy estate and returns the property to the debtor as though no bankruptcy occurred. Since *"an order of abandonment acts only as an abandonment of the estate's interest in the property and not as an abandonment of the debtor's interest,"* the debtor's title to

*the abandoned property after abandonment is effective, nunc pro tunc, as of the date of the filing of the petition.*

Under the prior Bankruptcy Act, abandonment was addressed piecemeal throughout the Act. Section 70 of the former Bankruptcy Act vested title to all of the debtor's nonexempt property in the trustee upon the filing of the petition. Title, therefore, was deemed to revest in the debtor upon abandonment. In contrast, under the Code, an estate composed of all of the debtor's interest in property is created upon the filing of the petition or the entry of an order for relief pursuant to Code § 541(a).

The trustee has control of the property, not title to the property, and Code § 554 simply divests the trustee of that control. Thus, abandonment of property of the estate may be sought by the trustee, the debtor in possession, or any other party in interest.

Although the legislative history indicates that property of the estate may be abandoned to any party with a possessory interest in the property, as well as to the debtor, such abandonment of the estate's interest to a specific nondebtor entity is inconsistent with the concept of abandonment under the Code. The abandonment process was intended under the Code to simplify case administration by restoring the debtor's prepetition interest in the abandoned property.

The debtor's interest under state law may be subject to competing claims to title or interests of third parties in the property. Abandonment was not intended as a process to determine and resolve conflicts regarding who has title to the abandoned property or the validity of competing liens or other interests of third parties in the property. The determination of competing claims to the abandoned property must be made either by the state courts after abandonment, or by adversary proceeding procedure under Bankruptcy Rule 7001.

The only determination made by the trustee and the court in the § 554 abandonment process is that the property is (1) burdensome to the estate, or (2) of inconsequen-

tial value. In making this determination, the trustee is guided by the best interests of the estate, not necessarily the interests of the debtor and creditors.

3 *Norton Bankruptcy Law and Practice 2d,* § 53.1, at 53–2 to 53–4 (1997) (footnotes omitted) (emphasis added); *accord* L. King, 5 *Collier on Bankruptcy,* ¶ 554.02[3], at 554–5 (15th ed.rev.1998) (abandonment under section 554 is not a transfer of property but simply "a divesture of all of the estate's interest in the property"); *In re Dewsnup,* 908 F.2d 588, 590 (10th Cir.1990) ("Property abandoned under this section ceases to be part of the estate.... It reverts to the debtor and stands as if no bankruptcy petition was filed"), *aff'd,* 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992); *In re Manchester Heights Associates, L.P.,* 165 B.R. at 44:

> In connection with § 554, the trustee has control of the property during the administration of the bankruptcy estate, not title to the property, and § 554 operates to divest the trustee of that control.... The only determination made by the trustee in the § 554 abandonment process is that the property is (1) burdensome to the estate, or (2) of inconsequential value.... Therefore, once one of these factors is found, the interest is removed from the bankruptcy estate and reverts to the debtor as though no bankruptcy occurred....
>
> Abandonment cannot be used "as a means of effecting a transfer of title." ....
> "The trustee or debtor-in-possession is simply divested of control of property because it is no longer property of the estate."

(citations omitted).

Courts have applied these longstanding abandonment principles when construing section 554. Thus, it has been held, for example, that the trustee's abandonment of property under section 554(a) does not constitute a taxable transfer under the Internal Revenue Code. *Accord, e.g., In re Terjen,* 30 F.3d 131 (4th Cir.1994) (Table), 1994 WL 411603, *1; *Matter of Popp,* 166 B.R. 697, 699 (Bankr.D.Neb.1993) (citing, *inter alia,* to *Brown v. O'Keefe*). Similarly, a chapter 7 debtor who brought suit on a prepetition claim against a third party prior to the aban-

donment of the claim by the trustee was held to have standing to sue because of the retroactive effect that abandonment has upon property interests. *Barletta v. Tedeschi,* 121 B.R. 669, 673–74 (N.D.N.Y.1990).

■ Based upon these well-accepted principles, I conclude that, in this instance, the trustee's abandonment of unsaleable inventory would not constitute a "distribution" of unlicensed phonorecords within the meaning of federal copyright law. Rather, *via* abandonment, the trustee would be electing to relinquish his right to control the disposition of certain estate property and this right would revert to the debtor as if the bankruptcy had not been filed. The property interests in the inventory would be thus treated as if they had remained with the debtor at all times. And the trustee would not be considered as having "distributed" property back to the debtor.

Accordingly, since I conclude that the estate would have no liability under federal copyright law if the trustee abandoned the unsalable inventory to the debtor, there is no basis on that point to deny the trustee the relief he seeks.

### III.

#### A.

Having rejected HFA's initial objection to abandonment, I now turn to its second contention.

HFA maintains that if the trustee is allowed to abandon the unlicensed inventory to the debtor, there is a significant likelihood that the property would be distributed and thus infringe upon the rights of HFA's principals. In support of this position, HFA notes that the whereabouts of the debtors' officers are unknown and so they cannot be held accountable. Further, HFA fears that, "as a practical matter," abandonment of the inventory to the debtor would result in UDS obtaining the property and trying to sell it. HFA Memorandum, at 8 n. 9. HFA also refers to the large number of unlicensed compact discs and suggests that the harm caused by an illegal distribution of the inven-

tory would be significant. HFA Memorandum, at 17.

Since there are unencumbered assets available to the trustee, HFA argues that the only prudent course is for the trustee to use those funds to destroy the unlicensed inventory. And in support for this position, HFA refers to *In re Audiofidelity Enterprises, Inc.,* 103 B.R. 544 (Bankr.D.N.J.1989), which indeed did order the destruction of unlicensed inventory. Finally, HFA makes clear that it is prepared to pay a portion of the costs of destruction, so that the estate need not shoulder all of this burden.

The trustee and UDS counter that there is no evidence that abandonment to the debtor would cause any imminent public harm. They note that the inventory has remained unsold and unmoved for years; the debtors are not operating; and HFA has never brought any civil infringement action against the debtors. Indeed, after abandonment, UDS argues, the automatic stay is terminated as to that property, 11 U.S.C. § 362(c)(1), thereby permitting HFA (or its principals) to take whatever legal action is appropriate to prevent any infringement of its copyrights. UDS Memorandum, at 4–5.

The trustee and UDS are also concerned that the cost of destruction may be a significant burden to the estate, even if HFA has agreed to bear up to $20,000.00 of that expense.[18] Implicitly, they suggest that creditors in general should not be held responsible for the disposition of property which they did not create and which has afforded them no benefit, especially when HFA or its principals have a remedy available under non-bankruptcy law. *See* UDS Memorandum, at 4–5 ("Indeed, HFA could upon abandonment, seek an order from either state or federal court enjoining the distribution . . .").

Finally, First Trust Bank proposes that I condition the trustee's ability to abandon the unlicensed inventory by requiring him to abandon the property to UDS (which it refers to as the sublessor) rather than to the debtor. First Union does not suggest that abandonment to UDS would insure that there would be no unlawful disposition of the

---

18. First Union has expressed a similar concern. Statement of Position of First Union, at 3.

unlicensed inventory. Rather, it reasons that UDS and HFA may be able to agree to some licensing arrangement. If not, then HFA is in no worse position than at present, and it will be incumbent upon UDS to destroy the inventory at its expense. First Union's Statement of Position, at 8.[19]

## B.

The premise that a bankruptcy court may deny or condition the ability of a trustee to abandon burdensome or valueless property of the estate was part of the common law surrounding abandonment under the former Bankruptcy Act. *See, e.g., Ottenheimer v. Whitaker,* 198 F.2d 289 (4th Cir.1952). In *Midlantic Nat. Bank v. New Jersey Dept. of Environmental Protection,* 474 U.S. at 500, 106 S.Ct. 755, the Supreme Court held that, prior to 1978, "the trustee's abandonment power had been limited by a judicially developed doctrine intended to protect legitimate state or federal interests." It further concluded that "[i]n codifying the judicially developed rule of abandonment, Congress also presumably included the established corollary that a trustee could not exercise his abandonment power in violation of certain state and federal law." *Id.,* at 501, 106 S.Ct. 755. Thus, a trustee has no right "to abandon property in contravention of state or local laws designed to protect public health and safety." *Id.,* at 502, 106 S.Ct. 755.

■■ In light of this interpretation, HFA and First Trust Bank are correct that the trustee's statutory right of abandonment now found in the present Bankruptcy Code is not absolute. However, in *Midlantic* the Court also explained that this exception to the trustee's statutory right of abandonment was a

> ... narrow one. It does not encompass a speculative or indeterminate future violation of such laws that may stem from abandonment. The abandonment power is not to be fettered by laws or regulations not reasonably calculated to protect health and safety from imminent and identifiable harm.

19. The trustee was willing to consider abandoning the inventory to HFA. UDS opposes such an

*Id.,* at 507 n. 9, 106 S.Ct. 755; *see generally State of N.J. Dept. of Environmental Protection v. North American Products Acquisition Corp.,* 137 B.R. 8, 12 (D.N.J.1992) ("Thus, the [*Midlantic*] Court's holding has been construed as self limiting").

■ In construing the contours of this narrow exemption to the trustee's statutory right to abandon valueless or burdensome estate property, courts have concluded that a trustee may not abandon property which includes hazardous wastes that the debtor had been ordered to treat prior to the bankruptcy filing. *Accord Com. of Pa., Dept. of Environmental Resources v. Conroy,* 24 F.3d 568 (3d Cir.1994). However, it would be inaccurate to conclude that a trustee may never abandon property which does not comply with various state environmental regulations. If there is no evidence of danger of immediate harm, the property may be abandoned:

> According to the teachings of Midlantic, where the public health or safety is threatened with imminent and identifiable harm, abandonment of the contaminated property must be conditioned on the performance of procedures that will adequately protect public health and safety....

> But this narrow exception applies where there is a serious health risk, not where the hazards are speculative or may await appropriate action by an environmental agency.

*In re Smith–Douglass, Inc.,* 856 F.2d at 16; *see also In re MCI, Inc.,* 151 B.R. 103, 108 (E.D.Mich.1992); *State of N.J. Dept. of Environmental Protection v. North American Products Acquisition Corp.,* 137 B.R. at 12 ("if the bankruptcy court finds that abandonment will not aggravate the threat of harm to the health and safety of the public or create some additional harm abandonment should be permitted"). Furthermore, the inactivity of a governmental agency in raising the asserted environmental problem "indicates lack of threat to public health or safety." *In re Smith–Douglass, Inc.,* 856 F.2d at 16 (citing *In re Purco, Inc.,* 76 B.R. 523, 533 (Bankr. W.D.Pa.1987)).

action, fearing that it would invalidate UDS's asserted lien position.

*In re Audiofidelity Enterprises. Inc.*, cited by HFA, does address the question of the destruction of unlicensed phonorecords in a bankruptcy context. However, this decision is materially distinguishable from the facts presented here and so should be detailed.

In *Audiofidelity* the chapter 11 debtor filed a motion to sell its inventory outside of the ordinary course of its business, pursuant to 11 U.S.C. § 363(b). Prior to its bankruptcy filing, this debtor had been a party to a long-standing copyright infringement action and in connection therewith had entered into a consent judgment in district court. Audiofidelity had acknowledged in this prepetition judgment that it had infringed upon the copyrights of the plaintiffs and it expressly consented to the award of specified damages and the entry of injunctive relief. *Id.,* 103 B.R. at 546.

In light of this consent judgment, the debtor had no prepetition right to distribute its inventory. To circumvent that restriction, the debtor, in conjunction with its bankruptcy sale motion, filed an adversary proceeding seeking to set aside that earlier consent judgment as "preferential." In response to this complaint, the other parties to the consent judgment (who also opposed the debtor's sale request) filed a counterclaim and motion "ask[ing] this Court to authorize the immediate destruction of the inventory, or in the alternative, to vacate the stay pursuant to Bankruptcy Code § 362 so that these defendants may return to … [district court] and attempt to … [obtain an] order [for] the destruction of the inventory." *Id.,* at 545.

After concluding that the debtor had demonstrated no basis to invalidate or avoid the consent judgment, the *Audiofidelity* bankruptcy court held that the copyright holders were entitled to relief on their motion. The bankruptcy court ordered the destruction of the inventory, on the premise that the dis-

trict court would so order pursuant to 17 U.S.C. § 503(b) [20] if the stay were lifted, and to reduce storage costs being borne by the estate. *Id.,* at 548; *see generally RSO Records, Inc. v. Peri,* 596 F.Supp. 849, 863 (S.D.N.Y.1984) ("Whether to order destruction [for copyright infringement] lies within the discretion of the district court"). In so ordering, the bankruptcy court did not specify the party who was to pay the costs associated with this destruction. *See generally Antenna Television v. Aegean Video Inc.,* 1996 WL 298252, *14 (E.D.N.Y.1996) (defendants ordered to pay the costs of destruction); *RSO Records, Inc. v. Peri,* 596 F.Supp. at 864 (the plaintiffs in a copyright infringement action were directed to destroy the infringing inventory).

As I mentioned earlier, HFA seeks a destruction order which is opposed by the trustee and UDS. First Union also opposes an order of destruction but instead suggests that it is appropriate in these circumstances to abandon the property—not to the debtor, but to UDS. UDS contends that it holds a lien on the inventory. UDS Objection, ¶ 10.[21] Therefore, First Union is suggesting that the property be turned over to this putative lienholder.

I recognize that a few courts have held, based largely upon the legislative history surrounding section 554 (rather than upon statutory language or historical usage), that a court may abandon property to an entity which was not in possession as of the time of the bankruptcy filing. *See generally Matter of Popp,* 166 B.R. 697 (Bankr.D.Neb.1993). However, the abandonment must be to an entity with a possessory interest in the property. *Id.,* at 700. *Compare In re Caron,* 50 B.R. 27, 31–32 (Bankr.N.D.Ga.1984) (abandonment may only be in favor of the debtor); [22] 3 *Norton Bankruptcy Law and Practice 2d,* § 53:1, at 53–3 (1997) (same).

---

**20.** Section 503(b) provides:

(b) As part of a final judgment or decree, the court may order the destruction or other reasonable disposition of all copies or phonorecords found to have been made or used in violation of the copyright owner's exclusive rights, and of all plates, molds, matrices, masters, tapes, film negatives, or other articles by

means of which such copies or phonorecords may be reproduced.

**21.** UDS' assertion of lienholder status is challenged by HFA. *See* HFA's Memorandum, at 6 n. 8.

**22.** The bankruptcy court in *In re Caron* explained:

In light of the historical meaning surrounding the effect of abandonment, it may not be permissible for a bankruptcy court to authorize a trustee to abandon property to any entity except the one who had prepetition possession at the inception of the case. If any entity holds a non-bankruptcy law right to obtain possession, that right may be asserted in accordance with relevant non-bankruptcy law upon termination of the bankruptcy stay.[23]

Not only does this result comport with the divesture effect of abandonment, it eliminates from the abandonment decision any need to determine the legitimacy of possessory interests of non-debtor third parties. If the property is valueless or burdensome to the estate, there is no intuitive reason why Congress should intend for bankruptcy courts to consider or enforce the interests of non-debtor parties in that property. Those interests would have been established under non-bankruptcy law and *fora* readily exist to determine and enforce those interests. *See* 3 *Norton Bankruptcy Law and Practice 2d,* § 53:1, at 53–3 (1997).

But even if a bankruptcy court has the power to abandon property to an entity not in possession at the time of filing but who has a valid claim to possession, *see generally* L. King, 5 *Collier on Bankruptcy,* ¶ 554.02[3], at 554–5 (15th ed. rev.1998), there

---

Local Rule No. 2 is also defective insofar as it indicates the property abandoned may be abandoned, i.e.: turned over to a moving creditor. While the Senate Report to § 554 (S.Rep. No. 95–989, 95th Cong., 2d Sess. 92 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787) indicates the abandoned property may be to a particular creditor, such notion conflicts with the limited purpose of § 554 and the requirement of Rule 7001(2) that requires adversary proceeding procedure, i.e.: plaintiff's complaint and defendant's answer, to determine the validity, extent and priority of a lien. Section 554 abandonment procedure is not intended to determine issues of ownership and possession of property. Thus, the procedure of § 554 and Rule 6007 cannot be used to effect turnover, recovery or legal title or possession to any particular creditor. The finding in § 554 and Rule 6007 is only that the property in question has no realizable equity for the Title 11 estate and should be abandoned from the estate. It is abandoned to the debtor and his non-bankruptcy estate and creditors as their interests may be under state law. Of course, the debtor after trustee abandonment may surrender property to any party. That party may then use whatever legal procedure may be available under state law to obtain legal possession.

*Id.,* at 31–32 (footnote omitted).

23. UDS assumes, by virtue of section 362(c)(1), that a creditor may recover possession of the property without violating the bankruptcy stay upon the abandonment of that property. *See, e.g., Matter of Hoyt,* 93 B.R. 540, 545 (Bankr. S.D.Iowa 1988) ("Had the trustee in the instant case formally abandoned the property from the estate ... the [mortgagee] could have proceeded with its pending civil foreclosure action by operation of section 362(c)"); *In re Farmer,* 81 B.R. 857, 862 (Bankr.E.D.Pa.1988) ("The redemption period passed without redemption, and the debtors' interest in the property has passed put of the estate. Movant may proceed against the proper-

ty in state court because the stay no longer applies"). While this assumption would arguably follow from the language of section 362(c)(1), most courts and commentators have construed the precise language of the subsection differently.

Section 362(c)(1) states that the stay of an act "against property of the estate" ends when the property is no longer property of the estate. However, section 362(a) creates a statutory protection for property of the debtor as well as for property of the estate. For example, section 362(a)(5) extends the stay to "any act to create, perfect or enforce against property of the debtor any lien" which arose prepetition, while section 362(a)(4) provides similar protection to property of the estate. Accordingly, were the inventory abandoned by the trustee to the debtor, the stay under section 362(a) would continue insofar as it enjoins actions against property of the debtor. *Accord, e.g., In re Whitaker,* 85 B.R. 788, 792 (Bankr.E.D.Tenn.1988); L. King, 5 *Collier on Bankruptcy,* ¶ 554.02[4], at 554–7 (15th ed. rev. 1998) ("Therefore, abandonment of property of the estate does not normally remove the stay's prohibition of a creditor's actions to recover that property"); 2 *Norton Bankruptcy Law and Practice 2d,* § 36:13 (1997).

However, I agree with the implied suggestion of UDS that if abandonment to the debtor is warranted here, there is no purpose served in continuing the bankruptcy stay as to the unlicensed inventory. Parties asserting rights in the property should be free to exercise those rights. Thus, I would exercise the authority under section 105(a) of the Code and terminate the stay as to this property, *sua sponte. Accord, e.g., In re Sanchez,* 1997 WL 861753, *2 n. 6 (Bankr. E.D.Va.1997); *In re Johnson,* 210 B.R. 1004, 1006–07 (Bankr.W.D.Tenn.1997); *In re Missouri Properties, Ltd.,* 211 B.R. 914, 928–29 (Bankr. W.D.Mo.1996); *In re Elder–Beerman Stores Corp.,* 195 B.R. 1019, 1023 (Bankr.S.D.Ohio 1996) (and cases cited).

are two reasons in this instance why the exercise of that power would not be appropriate. First, there was no evidence presented that UDS had any claim of possession of this inventory at the time of the bankruptcy filing. I am not aware of any action against the inventory which would provide it with any such right. Indeed, UDS describes itself as a simply a lien creditor. UDS Objection, ¶ 10. Second, while I rejected HFA's contention that abandonment back to the debtor was not a distribution in the copyright infringement sense, that argument may have greater validity if the trustee abandons the inventory to UDS (and if such action were viewed as a voluntary transfer).

Therefore, rather than expose the estate to this issue, I conclude it more appropriate not to direct the trustee to abandon the property to any entity other than the debtor.

### C.

■ Finally, I also determine that it is the better exercise of discretion not to order the destruction of the inventory at the expense of the bankruptcy estate, due to a combination of factors.

First, HFA made no showing that an abandonment order to the debtor will create an imminent harm that the inventory will be distributed. The debtor's principals are not active, nor is the debtor. While UDS counsel may believe (incorrectly, HFA argues) that it may obtain a compulsory copyright license from HFA for this inventory, there is no evidence that UDS (were it to obtain the right to dispose of the property) would violate federal copyright law. The unlicensed inventory had not been distributed previously, although it has been in storage for over two years. Moreover, neither HFA nor its principals had brought any civil action for infringement, thereby suggesting that there is a lack of imminency to this issue. *See also In re Smith–Douglass, Inc.*, 856 F.2d at 16. Finally, upon abandonment to the debtor, HFA (or its principals) would also be granted immediate relief from the stay to commence civil litigation in the appropriate district court seeking the destruction of the inventory. *See In re Audiofidelity Enterprises, Inc.*, 103 B.R. at 545 (copyright holder alter-natively sought to have the bankruptcy court order the destruction of the inventory or termination of the bankruptcy stay so that it might seek such equitable relief in a non-bankruptcy forum).

Second, if I granted HFA the relief it sought, at least one-half the costs associated with destruction would be borne by creditors of the estate, not by the debtor. There was no evidence offered that the debtor's creditors bear any responsibility for the creation of the infringing inventory, nor that they have derived any benefit therefrom. The present chapter 7 case exists in part due to the insistence of HFA, which sought conversion rather than dismissal of the case, so that a trustee might dispose of the inventory. At the time of conversion, indeed from the inception of this bankruptcy case in 1996, HFA has been acutely aware of the existence of the non-complying inventory.

■ While I do not suggest that HFA was obligated to reach an accord with the trustee concerning the sale of the unlicensed compact discs (there is no evidence to suggest that the negotiations were not undertaken by all sides in good faith), affirmative actions by creditors in seeking conversion of chapter 11 cases to chapter 7 cases may result in their tacit acceptance that chapter 7 may affect certain of their rights. *See generally, e.g., In re Hotel Associates, Inc.*, 6 B.R. 108 (Bankr.E.D.Pa.1980) (discussing implied consent under section 506(c)); L. King, 4 *Collier on Bankruptcy*, ¶ 506.05[5][c][ii] (15th ed. rev.1998) (same).

At no time during the hearing on dismissal or conversion of the chapter 11 cases did the issue of the estate's obligation to destroy the inventory arise. One must assume that all, including HFA, implicitly understood that the trustee was likely to abandon the inventory if he were unable to obtain valid copyright licenses for sale. It is less than equitable for HFA to seek, as a consequence of conversion, that other creditors bear the majority of the cost of destruction, now that negotiations with the trustee have ended. *See In re Bob Grissett Golf Shoppes, Inc.*, 50 B.R. 598, 609 (Bankr.E.D.Va.1985) ("A secured creditor who knows the debtor's estate

has no unencumbered assets and nevertheless moves for appointment of a trustee cannot by that means transfer to a third party, such as the trustee, the burden of financing the liquidation").

This dispute is materially different from that posed in *Audiofidelity*, where there had been long-pending infringement litigation, the entry of a prepetition judgment against the debtor, and the entry of prepetition injunctive relief against the debtor concerning unlicensed phonorecords. The debtor's bankruptcy filing in that instance may have been designed to undo that prepetition infringement judgment. The injunctive relief entered by the *Audiofidelity* bankruptcy court—to destroy the inventory—was simply an enforcement of the infringement judgment that could not be avoided. (Further, HFA assumes that it was the debtor's creditors who bore the expenses associated with destruction order.)

In sum, since there has been no showing that abandonment will result in "imminent" harm to the public, since HFA will have the right to take steps upon abandonment to protect its principals' copyright interests, since the remedy of destruction is discretionary and not mandatory under federal copyright law, and since the trustee's present interest in the inventory arose in part from HFA's request to convert rather than dismiss the earlier chapter 11 case, I conclude that the better exercise of discretion is to grant the trustee's motion to abandon the property to the debtor, rather than ordering its destruction.

In so doing, I will impose certain conditions on this abandonment. First, the trustee may only abandon the property on the 15th day from the date of the order granting relief. Second, the automatic stay will be terminated as to the unlicensed inventory in favor of HFA and its principals immediately. (The bankruptcy stay as to this unlicensed inventory shall be terminated as to all parties at the conclusion of this 15 day period.) The intent of these two conditions is to provide HFA or its principals the opportunity to

enforce whatever copyright protections the law provides them as against the debtor and third parties.[24] Third, the trustee is directed to inform the United States Attorney that the inventory will be abandoned in 15 days, and to inform him of the location of the property. This will afford the United States Attorney the opportunity to take steps to preserve one copy of each phonorecord to be abandoned before abandonment actually occurs. (As the property is not remaining estate property, and given the trustee's desire to eliminate future storage costs, it would be inappropriate to require the trustee to preserve one copy of each phonorecord.)

An appropriate order shall be entered.

## ORDER

AND NOW, this 7th day of January, 1999, for the reasons stated in the accompanying Memorandum, it is hereby ordered that the chapter 7 trustee's motion to abandon certain property to the debtor is granted, subject to the following conditions:

1. The trustee is permitted and authorized to abandon all unsold inventory of the consolidated debtors' estate presently located at 54 Conchester Road, Conshohocken, Pennsylvania, effective the 15th day from the date of this order.

2. The automatic stay is terminated as of the date of this order concerning this inventory in favor of the Harry Fox Agency and its principals.

3. The automatic stay is terminated effective the 15th day from the date of this order as to this inventory in favor of all parties who assert either a lien against this inventory or who assert an ownership interest in this inventory.

4. The trustee is directed forthwith to inform the Chief of the Fraud Section of the United States Attorney for the Eastern District of Pennsylvania that the inventory will be abandoned in 15 days. The trustee is also directed to inform this individual of the in-

---

**24.** HFA will not by this order be granted the right to sue the trustee in a non-bankruptcy forum for copyright infringement. *See generally In*

*re Lehal Realty Associates,* 101 F.3d 272, 276 (2d Cir.1996); *In re Kashani,* 190 B.R. 875, 884 (9th Cir. BAP 1995).

ventory's location and to permit him or his agents access to that inventory.